**Bernadette MOODY, Plaintiff/Appellant,**

v.

**Keith HICKS, et al., Defendants/Respondents.**

**No. 70982.**

Missouri Court of Appeals, Eastern District, Division One.

Nov. 18, 1997.

 

Heidi L. Leopold, St. Louis, for plaintiff/appellant.

Eric Kendall Banks, Steven R. Wild, St. Louis, for defendants/respondents.

GRIMM, Presiding Judge.

Defendants, St. Louis police officers, executed a search warrant for drugs and related items at plaintiff's apartment. Nothing was found. Plaintiff then sued the officers for trespass and other torts. During discovery, plaintiff sought the identity of the confidential informant who furnished the information for the search warrant. The trial court denied the request. The jury's verdicts were for defendants.

On appeal, plaintiff raises six points. She alleges the trial court erred in (1) denying her motion to disclose the confidential informant, (2) directing a verdict on a claimed violation of state constitutional rights, and (3) excluding evidence as to why one of the defendants left the police department. She raises three additional points which are not properly before us. We affirm.

## I. Background

Defendant Hicks' affidavit for a search warrant states that on March 23, 1989, an informant who had provided reliable information in the past contacted him. The informant told Hicks that a man named Carlton was selling cocaine in apartment 2–east at a specific address; the building at that address contains four family units. The informant did not know Carlton's last name, but gave a physical description of him. Hicks did not know Carlton.

Hicks and his partner placed the building under surveillance. They observed frequent traffic to and from the building with visitors making brief stops inside the building. However, they could not see which individual apartment the visitors were entering. This surveillance took place over portions of two days.

On March 29, Hicks prepared an affidavit. In addition to the above information, the affidavit recited that within "the past 18 hours, the confidential informant has been inside the apartment, 2–East ... and has seen large quantities of cocaine substances in clear plastic bags in powder and in rock (crack) form." The affidavit and a petition for search warrant were presented to a judge, who issued a search warrant.

On March 30, Hicks and his partner parked near the 4–unit building and waited for Carlton to return to his apartment. When Carlton returned, Hicks called the station and asked for assistance in executing the search warrant. Additional plain clothes officers arrived, as well as some in uniform. They, together with Hicks and his partner, are the defendants.

Defendants prepared to execute the warrant. Before reaching the individual apartment units, it was necessary to gain entrance through a "common area" door. As they approached this door, they observed a man later identified as Carlton walking through the common area toward them. Defendants identified themselves, saying "Police with a search warrant. Open the door." Carlton turned and went back into the common area. Defendants then entered the door and apprehended him.

Next, defendants entered apartment 2–east by knocking its door down. It fell onto a glass table, breaking the glass. Plaintiff, who resided at apartment 2–east, was searched and handcuffed. Although some of the defendants searched the apartment, they did not find any contraband.

Hicks then asked Carlton where he lived and he replied "2–west." Apartment 2–west is across the hall from apartment 2–east. Carlton consented to defendants' search of his apartment. There they found cocaine and other contraband.

## II. Confidential Informant

■ Plaintiff's first point alleges the trial court erred in denying her motions to disclose the confidential informant. She contends she was "denied the right to depose, examine or cross-examine an essential witness." Further, she argues, defendants "were allowed to rely on [the informant's] testimony and evidence," which caused her "substantial harm and prejudice."

In her renewed motion to disclose, plaintiff alleged that it was necessary that she be "allowed to question the confidential informant as to the information supplied to defendants in relation to probable cause for the search warrant." In addition, she said that it was her "belief that no confidential informant exists, and defendants' inability to produce said confidential informant goes directly to the issue of probable cause for any search warrant." The trial court denied the motion.

Immediately before trial, plaintiff filed a motion in limine. Among other things, she asked the trial court "to enter an order excluding any evidence or testimony pertaining to any information given, received or relied upon from any confidential informant in relation to probable cause for affidavit for search warrant, search warrant or search and seizure." The trial court ruled that "the affidavit comes in, which includes the statements of the confidential informant. Everything else about the confidential informant is out." At trial, plaintiff objected to "any testimony regarding any confidential informant." She also raised the issue in her new trial motion.

■ Generally, the state has the privilege to withhold from disclosure the identity of persons who furnish information of violations of law to law enforcement officers. *See Roviaro v. United States*, 353 U.S. 53, 59, 77 S.Ct. 623, 627, 1 L.Ed.2d 639, 644 (1957). The purpose of the privilege is the furtherance and protection of the public interest in effective law enforcement. By preserving the informer's anonymity, informers are encouraged to come forward with information about crimes. *Id.*

■ However, the privilege is limited. "Where the disclosure of an informer's identity, or of the contents of his communication, is relevant and helpful to the defense of an accused, or is essential to a fair determination of a cause, the privilege must give way." 353 U.S. at 60–61, 77 S.Ct. at 628. Our supreme court followed and adopted *Roviaro* in *State v. Edwards*, 317 S.W.2d 441, 446–47 (Mo. banc 1958).

■ In criminal cases, the defendant, as the party seeking disclosure, "bears the burden of developing a record showing the need for disclosure." *State v. Payne*, 660 S.W.2d 24, 25 (Mo.App.E.D.1983); *State v. Amrine*, 741 S.W.2d 665, 671 (Mo.banc 1987). Whether a defendant can have a fair trial without disclosure of the confidential informant depends upon the circumstances and is a matter resting within the sound discretion of the trial court. *Id.*

The parties have not referred us to any Missouri case involving confidential informants in civil cases. Nor has our independent research disclosed any. However, the federal courts have recognized the informer privilege in certain federal civil actions and have generally applied the *Roviaro* test to determine if disclosure is required. Thomas J. Oliver, Annotation, *Application, in Federal Civil Action, of Governmental Privilege of Nondisclosure of Identity of Informer*, 8 A.L.R. Fed. 6 (1971).

*Hampton v. Hanrahan*, 600 F.2d 600 (7th Cir.1979) is a leading federal case. In that case, the police officers were acting pursuant to a court ordered search warrant. *Id.* at 635. The search warrant had been obtained based on an officer's affidavit which said that "a reliable informant had provided information that illegal weapons" were in a specific apartment. *Id.* The plaintiffs sought the informant's identity to determine whether probable cause existed for the issuance of the warrant. *Id.* at 635–36. The *Hampton* court recognized that the *Roviaro* test had

been applied in the context of civil litigation in a variety of cases. *Id.* at 637.

In *Hampton,* as in the case before us, the case proceeded to trial without disclosure of the confidential informant's name. *Id.* at 636. Considerable evidence was introduced leading to the conclusion that the officer did not have an informant. *Id.* at 637 and at 636, n. 38. The court noted the evidence at trial indicated that the request for disclosure was not based on "mere speculation about the informant's identity." *Id* at 638. It reversed and remanded the case, ordering the officer to disclose the identity of his informant, subject to the terms of a protective order. *Id.* at 639.

Here, unlike the facts in *Hampton,* plaintiff did not introduce any evidence that officer Hicks did not have an informant. Moreover, additional evidence to support the search warrant was received at trial without objection. Hicks learned that Carlton's name was Carlton Curry. A Missouri driver's license for Zonetta Curry was found in plaintiff's apartment. Hicks' partner asked plaintiff "[has] Carlton visited [your] apartment?" She said "yes ... he visited her apartment, but doesn't anymore."

In addition, plaintiff brought out on cross examination of Hicks that a "controlled buy" had been made from Carlton. The confidential informant made the purchase from Carlton at a lounge, not the apartment building.

As previously noted, our review is limited to a determination of whether the trial court abused its discretion in denying plaintiff's request for disclosure of the identity of the confidential informant. Under the facts and circumstances as developed at trial, we cannot say that the trial court abused its discretion. Point denied.

In passing, we note that the question presented here is a troubling one. Concealment of an informer's identity encourages the communication of knowledge of criminal activities without fear of retaliation or reprisal. *Michelson v. Daly,* 590 F.Supp. 261, 264 (N.D.N.Y.1984). As such, it aids society in general by assisting law enforcement officers in apprehending criminals.

On the other hand, some discovery must be permitted unless law enforcement officers are to be, as a practical matter, entirely insulated from any civil action against them arising from searches conducted as a result of information purportedly received from a confidential informant. *Rodriguez v. City of Springfield,* 127 F.R.D. 426, 429 (D.Mass. 1989).

These competing interests exist in the present case. Plaintiff had limited opportunity to challenge much of the evidence, particularly what informant may or may not have told Hicks. Further, plaintiff's only opportunities for legal recourse appear to be against defendants or the informant. Still, even if we were to compel disclosure, plaintiff would face substantial immunity obstacles. However, in Missouri, law enforcement officers are not insulated from liability for acts done in bad faith or with malice. *State ex rel. Twiehaus v. Adolf,* 706 S.W.2d 443, 446 (Mo.banc 1986).

We recognize that it is often difficult to balance the competing interests when an informant's identity and testimony could be relevant. Professor LaFave suggests the technique of an *in camera* hearing. 2 Wayne R. LaFave, *SEARCH AND SEIZURE, A Treatise on the Fourth Amendment,* section 3.3(g), (3d ed.1996), especially pages 198–203. Under such a procedure, the law enforcement officer and the confidential informant appear with appropriate counsel before the trial court. Opposing parties and counsel are not permitted to attend, but may suggest questions for the judge to ask. The judge takes sworn testimony from the officer and informant, and a transcript is made and sealed so that it can be available for appellate review. The judge makes a summary report to the parties as to the existence of the informer and to the communications made by the informer to the law enforcement officer. Every reasonable precaution is taken to protect the anonymity of the informer.

This procedure, or one substantially similar, has been followed in several cases. *See e.g. Rodriguez,* 127 F.R.D. at 431; *Michelson,* 590 F.Supp. at 266; *People v. Darden,* 34 N.Y.2d 177, 356 N.Y.S.2d 582, 313 N.E.2d 49 (1974). By utilizing such a procedure in

the future, the dilemma the trial court and the parties faced here could be minimized and the competing interests more fairly balanced.

### III. State Constitutional Claim

In her second point, plaintiff alleges the trial court erred in directing a verdict for defendants on count IV of her petition, a claim for "violation of state constitutional rights." She contends that "no Missouri statute or case law precludes said cause of action, and dismissal of said count substantially harms and violates plaintiff's constitutionally protected rights and denies her due process of law." She relies on Article I, Section 15 of the Missouri Constitution, which states that "the people shall be secure in their persons [and] homes ... from unreasonable searches and seizures."

Plaintiff acknowledges no Missouri precedent exists permitting suits for monetary damages by private individuals resulting from violations of the Missouri Constitution. Still, she argues section 15 should be construed as "self-executing," and that we should imply such a cause of action. We decline to do so.

The trial court found that this count is similar to an action "under United States Code Section 1983 for a civil rights violation." We agree. Such an action is cognizable only because Congress enacted that legislation authorizing suits for federal constitutional violations. The Missouri General Assembly has not enacted similar legislation. Whether such a cause of action should be permitted is best left to the discretion of the General Assembly.

However, plaintiff is not left without a remedy. Rather, she was entitled to and did bring common law actions for trespass, battery, and false imprisonment. Her second point is denied.

### IV. Evidence of Why One Defendant Left His Job

Plaintiff's third point alleges the trial court erred in sustaining defendants' motion in limine. The trial court precluded evidence of one defendant's reasons for leaving the St.

Louis Metropolitan Police Department. Plaintiff argues the evidence would have been relevant to that defendant's character for truth and veracity.

This point is not preserved. Plaintiff did not make an offer of proof of what the officer's reason was for leaving the department. In the absence of such a showing, we cannot say that the trial court abused its discretion by excluding the evidence. *Brown v. Hamid*, 856 S.W.2d 51, 56 (Mo.banc 1993). Point denied.

### V. Other Points Relied On

We summarily deny plaintiff's three remaining points. Her fourth point alleges the trial court erred in refusing her tendered jury instruction regarding absent witnesses. Plaintiff does not set forth the instruction in her argument or anywhere in her brief as required by Rule 84.04(e).

Nevertheless, we have examined the instruction in the legal file. It is patterned after a federal jury instruction. When tendered, plaintiff noted that the giving of the instruction "is within the discretion of the trial court." The trial court did not abuse its discretion in refusing the instruction.

Plaintiff's fifth point alleges the trial court erred in allowing counsel for the St. Louis Police Department Board to review and determine what records would be produced *in camera* to the trial court pursuant to plaintiff's subpoena. Plaintiff's subpoena was issued the day after the trial began. It sought "any and all personnel records" of the defendants.

Our review of this point is hampered. Plaintiff's brief does not refer us to any transcript page, as required by Rule 84.04(h), where the alleged review took place. Nor does it refer to any action the trial court took, or refused to take, concerning these records. Moreover, she does not cite any case in support of her point relied on as required by Rule 84.04(d).

In plaintiff's sixth point, she alleges the trial court erred in refusing to permit certain rebuttal evidence. Once again, her point relied on fails to cite any case in support. Further, her argument fails to give any tran-

script page references where the evidence was offered. We will not convict the trial court of error "in the abstract."

The trial court's judgment is affirmed.

PUDLOWSKI and GARY M. GAERTNER, JJ., concur.